FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

99 APR 23 AM 11:40

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **FRANCIS LITTLE,** | ] |
| Plaintiff, | ] |
| vs. | ] CV 97-N-3124-W |
| | ] F:\WPDOCS\NELSON\CLERK2\Little |
| **JIM WALTER RESOURCES, INC.,** | ] v. JWR (cv97n3124w - OPINION |
| | ] SJ).wpd |
| Defendant. | ] |

### MEMORANDUM OF OPINION

ENTERED
APR 23 1999

### I. Introduction

In this action properly before the court pursuant to 28 U.S.C. § 1331, the plaintiff, Francis Little, alleges that she suffered hostile environment sexual discrimination and retaliatory employment termination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, while an employee with the defendant corporation, Jim Walter Resources, Inc. ("JWR"). Plaintiff also asserts a state law tort claim for intentional infliction of emotional distress over which the court has jurisdiction pursuant to 28 U.S.C. § 1367.

The matter is presently before the court on Jim Walter Resources' motion for

summary judgment,[1] filed February 16, 1999.[2] This motion has been fully briefed. Upon due consideration, the motion will be **GRANTED**.

## II. Statement of Facts

Viewed in the light most favorable to the plaintiff, the evidence of record suggests the following version of events. Plaintiff Francis Little was a coal miner with JWR from September 22, 1980 until June 19, 1996. In January of 1995, Little began working at JWR's Mine No. 7 on the evening shift as a member of the de-gas unit. All the members of the de-gassing crew were union members, including the plaintiff. Those other members were Al Dickenson (the crew's supervisor), Charlie Boyd, and Henry Burney. It was Burney, a co-employee, who Little points to as the lone instigator of the sexually discriminatory acts.

Mr. Burney's acts of discrimination allegedly began in January or February of 1995. *See Little Depo.* at 81-93. Further incidents occurred sporadically in May of 1995 and again in October of the same year. *See id.* at 93-103. In December of 1995, Little told Burney that if he did not stop harassing her, she was going to tell the supervisor. *See id.* at 103-104. He did not stop, and in January of 1996 three more incidents of harassment occurred. *See id.* at 105-110.

On January 22, 1996, Little began a leave of absence for surgery on her injured knee. On May 3, 1996, she was examined by Dr. Bromberg who determined that she was able to

---

[1] In a related matter, the court has for consideration defendant's motions to strike portions of plaintiff's affidavit submitted in opposition to summary judgment. The motion to strike was filed March 19, 1999. The court will consider this matter contemporaneously with the motion for summary judgment and will disregard any portions of the affidavit not properly before the court on summary judgment.

[2] The court recognizes that the original scheduling order set out a dispositive motion deadline of February 15, 1999. Unfortunately, that date was Washington's Birthday, a legal holiday. Therefore the court deems defendant's motion for summary judgment timely submitted.

2

return to work that day. Little was scheduled to work on May 4, 6, and 7, 1996. However, apparently at her suggestion, Dr. Burney filled out a return to work slip allowing her to take off until May 8. In the interim, she visited her son in Georgia.

When Little returned to work on May 8, 1996 she had another run-in with Mr. Burney. A few days later, on a day when Burney was not at work, Little went to their supervisor Dickenson to complain about Burney's actions. Dickenson told Little to bring it up when Burney returned to work and he would talk to him. The next day Little told Burney, in the presence of Dickenson, that she was tired of his abuse and if he did not stop she would inform Bill Beemer, the industrial relations supervisor. Mr. Burney allegedly replied, "Damn you and fuck Bill Beemer, this is my mouth, I say what I want to say, nobody can stop it." *Little Depo.* at 118. Dickenson interrupted the argument by telling both parties that he would not tolerate that type of bickering at the work site.

However, the conflict between the two employees heated up again a few days later. On May 21, 1996, Burney called Bill Beemer and told him that Little had accused him of harassment and threatened a lawsuit. The next day Beemer called Little into his office to discuss the situation. She told Beemer that Burney had made some improper remarks about her personal life, but that she had no problem with him in the past few days. Beemer told Little to contact him if any similar problem arose in the future.[3]

A few days after Little's meeting with Beemer, the power went out in the mine and

---

[3] The court notes that Little's affidavit appears to contradict this version of events. *See Little Aff.* ¶ 21. However, these facts were admitted by the plaintiff, *see Plaintiff's Responsive Statement of Facts* Nos. 63-66, and are consistent with the story she told in her deposition. *Little Depo.* at 125-26. The court will therefore disregard Little's affidavit testimony to the contrary, and grant defendant's motion to strike this portion of the affidavit.

3

the workers had to evacuate. On the way out, Burney slammed the man door cover in Little's face, saying "I'm not holding the damn door for you." *Little Aff.* ¶ 23. Little was angered and scared by the incident. On Tuesday, May 28, 1996, she called Beemer to set up a meeting with between the two of them, Burney, and Frank McKenzie, the union representative.

During the meeting, Little reported the slamming of the door and another incident six months earlier in which Burney told a co-worker personal aspects of Little's life. According to the plaintiff, she attempted to go into detail about other incidents as well but was cut off by Beemer and Burney. Beemer told her, in essence, "that's the way coal miners act. You shouldn't wear your feelings on your sleeve." Beemer did not discipline Burney, and the plaintiff "felt like he was defending whatever Mr. Burney did." *Little Depo.* at 130. Beemer did say that while at work both parties should conduct themselves in a professional manner. For whatever reason, the alleged harassment by Burney ceased after this meeting.

Little once again saw Dr. Bromberg on June 14, 1996. She was scheduled to work on June 15 and 17, 1996, but did not return until June 18, 1996. Upon her return, she presented a "return to work slip" from Dr. Bromberg. On June 19, 1996, the Mine Clerk, Kelley Franklin, called Dr. Bromberg's office to determine why he had given Little permission to miss work on June 15 and 17. Dr. Bromberg's office told Ms. Franklin that Little was able to return on the scheduled days, but had told the doctor that she was not due back until the June 18 and had requested a "return to work" slip for that day. Ms. Franklin also learned that Little had earlier asked for a return slip on May 8, 1996 when she

4

in fact was able to work on May 3, thus missing three days of work. Dr. Bromberg sent a letter to JWR stating the same.

According to the defendant, Beemer deemed the absences of May 4, 6, 7 and June 15 and 17 unexcused based on the information from Dr. Bromberg,. Pursuant to Article XXII(i)(4) of JWR's collective bargaining agreement ("CBA") with the United Mine Workers of America, any employee that misses two consecutive days of work without permission from a physician or JWR can be discharged. Pursuant to the CBA's terms, Beemer decided to suspend Little's employment with intent to discharge. He held a "24-48 hour" meeting, as required by the collective bargaining agreement. In the meeting, the plaintiff was shown a copy of the letter from Dr. Bromberg, but denied lying to him about her work schedule. She did admit that she asked for leave until May 8 because she wanted to visit her son. She further admitted that no one at JWR gave her permission to take off of work. *See Plaintiff's Responsive Statement of Facts* Nos. 101-02 (admitting these facts). At the end of the meeting Beemer informed Little that she was discharged.

Little did not file a grievance and the UMWA did not pursue an arbitration hearing on her behalf. Little filed a charge with the EEOC on December 4, 1996 alleging she had been discriminated against on the basis of sex.

Little also alleges that she was terminated because of her complaints about sexual harrassment. She contends that the timing of her termination establishes a link between it and her complaints about Burney. Little also claims that she has personal knowledge of several other employees who were not fired after violating the two consecutive days policy, *see Little Aff.* ¶ 33, and therefore alleges that the policy was applied to her in a

5

discriminatory fashion.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative showing" that crucial evidence is missing "by reference to any

6

combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38.

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from

8

the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A.     Plaintiff's Title VII Sexual Harassment Claim.

The court agrees with JWR that the plaintiff's sex discrimination charge against it is untimely. Title VII requires an individual to file a charge of discrimination with the Equal Employment Opportunity Commission within 180 days after the challenged employment practice has occurred. 42 U.S.C. §2000e-5(e); *Welty v. S.F. & G., Inc.*, 605 F. Supp. 1548, 1553 (N.D. Ala. 1985). Therefore, a Title VII claim cannot be based on discriminatory actions taken more than 180 days before the EEOC charge was filed.

> A discriminatory act which is not made the legal basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*United Air Lines v. Evans*, 431 U.S. 553, 558 (1977).

Little did not file with the EEOC until December 4, 1996. However, she admits that Burney's harassment ceased after the meeting on May 28, 1996, and that no further incidents occurred after that date. *See Plaintiff's Responsive Statement of Facts* No. 81; *Little Depo.* at 205-06. This meeting was held some 190 days before the EEOC charge was filed, meaning that no incidents of harassment occurred within plaintiff's 180 day

9

window. Plaintiff's claims of harassment therefore appear to be time-barred.

In an attempt to avoid this result, plaintiff relies on the "continuing violation" exception to the statutory time bar. The exception is most typically applied to an action like a hostile environment claim, where the charge, by its own terms, necessitates a pattern of incidents occurring over an extended period and the unlawfulness of a defendant's actions is often not apparent until the incidents can be viewed in the aggregate. *Hull v. Case Corp.*, 1993 WL 603554 (S.D. Fla. 1993)(unpublished). However, this theory assumes that new incidents continue to occur which carry the unlawful pattern of action forward into the 180 day time window. It is therefore possible to use this theory only when the last incident in the string of hostile environment infractions occurs within the statutory period. *See Stockett v. Tolin*, 791 F. Supp. 1536 (S.D. Fla. 1992) (allowing the plaintiff to plead incidents spread over several years, where those incidents taken together created a hostile environment and where the last of those incidents occurred within the limitations period). Plaintiff admits that no timely infraction occurred, so the continuing violation doctrine cannot save her untimely claims.

Plaintiff, while admitting that no act of harassment occurred within the statutory period, seems to argue that the odor of harassment hung in the air until her termination, making her claims timely. She contends that a hostile environment "permeates" the workplace, therefore posing a continuing violation of Title VII up until the time of termination.[4] The court is not persuaded. Despite the common use of words like

---

[4] If plaintiff is suggesting that the termination itself counts as a timely wrongful act, she is mistaken. For the continuing violation theory to apply, an act flowing from the same basic pattern of behavior must occur within the 180 day period. Adverse actions which are different in type, are taken for different discriminatory

10

"atmosphere" and "environment" to describe harassment claims, any claim of discrimination must in the end be made up of specific acts of intentional wrong-doing. The "hostile environment" moniker describes only the type of acts involved. It does not imply that a disembodied "environment" can exist absent such acts. Therefore only acts can be used to make out a timely claim, and plaintiff can point to no acts of harassment within the 180 days preceding her EEOC charge.

Considering that the last possible day that a specific incident could have occurred was May 28, 1996, the 180 day time limit clearly had expired by the time plaintiff filed with the EEOC. Accordingly, summary judgment will granted as to plaintiff's Title VII sexual discrimination claim.

### B. Plaintiff's Claim of Intentional Infliction of Emotional Distress.[5]

The plaintiff also asserts state law claims of intentional infliction of emotional distress caused by the harassing and discriminatory acts of Mr. Burney, and claims that these acts caused JWR to be liable via *respondeat superior*. JWR contends, and the plaintiff agrees, that some of the claims of intentional infliction of emotional distress are time-barred due to the running of the two year statute of limitations. *Ala. Code* § 6-2-38(1). According to

---

reasons, or are initiated by different decisionmakers, do not form a pattern and do not trigger the continuing violation doctrine. *See Huckaby v. Moore*, 142 F.3d 233, 239-40 (5th Cir. 1998) (demotion and failure to promote too dissimilar to a time-barred pattern of harassment to resurrect claims based on the harassment); *Sabree v. United Brotherhood of Carpenters and Joiners No. 33*, 921 F.2d 386, 399, 401 (1st Cir. 1990) (plaintiff must show a "substantial relationship" between the time-barred acts and a timely violation, including that they "emanat[ed] from the same discriminatory animus"). Thus plaintiff's timely claim of retaliatory termination cannot resurrect time-barred claims of co-employee harassment. *See, e.g., Burger v. City of Daytona Beach*, 1996 WL 673144 at *8 (M.D. Fla. 1996).

[5]In Alabama, intentional infliction of emotional distress is more commonly known as the tort of outrage.

11

both parties, only claims arising two years before the filing of this suit can be considered. The incidents between January 1996 and May 1996 are thus the only ones properly before this court.

Under Alabama law, to state a claim for the tort of intentional infliction of emotional distress, the plaintiff must allege and prove "that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993). Because this cause of action is available only in the most egregious circumstances, very few cases present a question for the jury. *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). A determination as to whether conduct is sufficiently objectionable to support a cause of action for outrage or intentional infliction of emotional distress may be made by the trial court as a matter of law. *Logan v. Sears, Roebuck & Co.*, 466 So. 2d 121, 123 (Ala. 1985). In fact, virtually every case in which state courts have allowed claims of outrage to go to the jury falls into one of three narrow categories: 1) "cases having to do with wrongful conduct in the context of family burials"; 2) cases in which "insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim"; and 3) cases "involving egregious sexual harassment." *Thomas*, 624 So. 2d at 1044.

Plaintiff argues that this case falls into the last category of permissible outrage claims. However, the Alabama Supreme Court has made it clear that the ordinary sexual harassment claim will not qualify for the tort of outrage. Courts have therefore turned away

12

outrage claims based on fairly substantial allegations of sexual harassment. For example, in *McIsaac v. WZEW-FM Corporation, et al.*, 495 So. 2d 649 (Ala.1986), the Supreme Court of Alabama did not find the requisite outrageous conduct in a situation where the company's owner repeatedly requested that the plaintiff "have dinner with him, [] kiss him, or [] have an affair with him." *Busby v. Truswal Systems Corp.*, 551 So. 2d 322, 327 (Ala. 1989) (describing the facts of *McIsaac*). The court found no outrage claims even though the plaintiff was fired when she continually rejected the owner's advances. In *Brassfield v. Jack McClendon Furniture, Inc.*, 953 F.Supp. 1424, 1435-36 (M.D. Ala. 1996) the court, relying on *McIsaac*, held that no jury question of outrage existed when a co-worker routinely made comments and asked questions about the plaintiffs' breasts, how one of them ate bananas in a sexual way, whether they liked whips, and what their favorite sexual positions were.

Clearly the present case deals with sexual harassment in some degree, but plaintiff states at best a garden-variety claim of harassment. Nothing about the case marks it as particularly "egregious" or unusual. *See Thomas*, 624 So. 2d at 1044. Given the Alabama Supreme Court's repeated admonition that outrage is not intended to become a general purpose tort for use in every-day litigation and "the limited nature of [the outrage cause of action]" *id.*, the court finds that the plaintiff's claim of intentional infliction of emotional distress cannot survive summary judgement.[6]

### C. Plaintiff's Claim of Retaliation.

---

[6] JWR also contends that it cannot be held vicariously liable for Burney's actions. In light of its conclusion that the plaintiff cannot meet the basic requirements for an outrage claim, the court need not address this argument.

In addition to her claims of sexual harassment and outrage, plaintiff has also asserted a claim of retaliation under Title VII. Section 704 of that statute protects an employee from being discriminated against for opposing an employment practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e-3(a). Plaintiff bases her claim of retaliation on this so-called "opposition" clause.

A plaintiff pursuing a retaliation case must proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir.1993). "In order to prevail, the plaintiff must first establish a prima facie case by showing (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action. Once a prima facie case has been established, the defendant may come forward with legitimate reasons for the employment action to negate the inference of retaliation. If the defendant offers legitimate reasons for the employment action, the plaintiff then bears the burden of proving by a preponderance of the evidence that the reasons offered by the defendant are pretextual." *id.* at 1163; *see Reynolds v. CSX Tranportation, Inc.*, 115 F.3d 860, 868 (11th Cir. 1997). The defendant has admitted that the plaintiff engaged in a protected activity and that an adverse employment action occurred. Given these admissions, the court is left to decide whether plaintiff can show a causal relationship between her protected activity and the adverse action and so state a prima facie case, and whether evidence exists to call into question the reasons offered by JWR for plaintiff's termination.

The plaintiff asserts that the temporal proximity of Little's complaint and her

14

termination is enough to establish a prima facie case and create an inference of retaliation. The court recognizes that evidence of suspicious timing may, under some circumstances, be enough to make out a prima facie case.[7] As Judge Propst of this court has pointed out, however, "the expiration of a short time alone can create an inference of a causal link" only if "there [is] no . . . intervening factor between the charge of discrimination and discharge." *Booth v. Birmingham News*, 704 F. Supp. 213, 215 (N.D. Ala. 1988). The presence of an intervening event breaks the causal chain and dissipates the inference of discrimination.

In this case, the defendant uncovered evidence of significant misconduct by Little in the interim between her protected activity and her termination. The information given to Kelley Franklin by Dr. Bromberg's office on June 19, 1996 and the doctor's subsequent letter established that the plaintiff had missed consecutive days of work in May and June without a doctor's permission or JWR's assent.[8] *Franklin Aff.* ¶ 14-16; *Beemer Aff.* ¶ 25-27. Moreover, the evidence suggested that Little had intentionally misled her doctor and the company in order to cover up these absences. The CBA clearly allows for termination under these circumstances. Dr. Bromberg's allegations therefore provide a reasonable alternative explanation for JWR's decision to terminate plaintiff when it did. The company's

---

[7] *See, e.g., Goldsmith v. City of Atmore*, 996 F.2d 1155, 1164 (11th Cir. 1993) ("[E]vidence that [the] employer knew of the employee's protected activities, combined with a proximity in time between protected action and the allegedly retaliatory action, is sufficient to establish a *prima facie* case of retaliation.").

[8] Little has essentially admitted that she asked her doctor to extend her leave until May 8, *see Deposition of Francis Little*, pp. 30-32, 39, 148-50; *Plaintiff's Responsive Statement of Facts* Nos. 101-02, though she denies misleading the doctor regarding her leave in June. The court notes, however, that it does not really matter whether Doctor Bromberg's charges were true. "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which [s]he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Jones v. Gerwen*, 874 F.2d 1534, 1540 (11th Cir. 1989). The plaintiff has not presented the court with any evidence which calls into doubt JWR's honesty in assessing the situation.

15

quick response to plaintiff's absences, when compared to the relatively long period of time between plaintiff's protected activity and her termination, further undercuts any inference of retaliation based on the timing of her termination. Under these circumstances, the plaintiff cannot rely on proximity in time alone to prove that her protected activities motivated JWR's actions.

The plaintiff entire retaliation case therefore hangs on her claim that other JWR employees committed similar violations but were not fired. The only evidence in the record on this point comes from the plaintiff's own affidavit. Plaintiff averred that "I personally have knowledge of several employees who were not fired or were fired and immediately rehired . . . for missing consecutive days, including but not limited to an employees [sic] by the name of Tim Vest, who works at JWR at the 'Number 2 Longwall' and 'Patsy,' whose last name is unknown to me at this time." *Little Aff.* ¶ 33. Little relies on this piece of evidence to avoid summary judgment on her case at both the prima facie and pretext stages.

In the court's view, this evidence is simply not sufficient to bear the burden plaintiff has placed upon it.[9] It is true that evidence that similarly situated employees were treated differently is classic circumstantial evidence of discrimination, and is often called upon to prove both a plaintiff's prima facie case and pretext. However, such evidence is relevant and probative only if it compares apples to apples, i.e. only if the "comparators" which

---

[9]JWR has moved to strike this portion of Little's affidavit. The court has some doubts about whether this evidence would ultimately prove to be admissible at trial. The court suspects that hearsay is involved. However, it is not clear that this is the case from the face of the affidavit itself, so the evidence cannot be disregarded on this ground. However, as the discussion below reveals, defendant's objection based on relevance is well taken and the motion to strike this portion of the affidavit will therefore be granted.

16

plaintiff chooses are similarly situated to the plaintiff in all important respects. Evidence relating to the treatment of other employees who are not similarly situated does not prove discrimination and may properly be excluded from consideration. *See Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306 (11th Cir.), *modified in other respects*, 151 F.3d 1321 (1998). The Eleventh Circuit has indicated that, in disciplinary cases, a fairly tight fit is required between the allegedly wrongful acts of the plaintiff and those of the comparators. "[I]t is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir. 1998). The court has gone so far as to suggest that the offenses committed by the comparators must be "'nearly identical.'" *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984). Likewise, the court has indicated that employees who are disciplined by different supervisors may not be "similarly situated." "[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989); *see Bessemer Carraway Medical Center*, 137 F.3d at 1312 (noting that when employees are under different supervisors this "may be sufficient to prevent them from being considered 'similarly situated'").

Plaintiff's affidavit evidence contains only the bare assertion that other employees missed consecutive days of work and were not fired. This evidence does not indicate that the circumstances surrounding these absences were "'nearly identical,'" *Nix*, 738 F.2d at 1185, or that the same supervisors were involved. Plaintiff's affidavit therefore does not establish that plaintiff has compared herself with employees who were "similarly situated"

17

in the important respects, and so by itself proves almost nothing. Nor has plaintiff come forward with any other evidence to bolster her claims. She therefore faces summary judgment with little or no proof of retaliation.

In contrast, the defendant has presented substantial evidence that a legitimate reason motivated Little's termination. In light of defendant's evidence, and "because the plaintiff bears the burden of establishing pretext, [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). In fact, plaintiff must "produc[e] sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. BP Oil Co.*, 32 F.3d 520 (11th Cir. 1994); *see also Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991). For the reasons set out above, plaintiff's affidavit is not "sufficient evidence" of pretext, nor does any other evidence in the record fit this bill. Plaintiff has therefore failed to adequately respond to defendant's evidence.[10] Summary judgment will therefore be granted as to plaintiff's claims of retaliation.

### V.    Conclusion.

---

[10] Once a summary judgment movant has demonstrated that no material issues of fact remains for trial either by pointing to gaps in the non-movant's evidence or by coming forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial," "the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (*en banc*). The court notes in this regard that proof that defendant acted because of a legitimate reason disproves pretext, as these are two sides of the same coin.

Accordingly, the defendant's motion for summary judgment will be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done this 23rd day of April, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE